NANCY GITTLEMAN *et al.*, Plaintiffs-Appellants, v. CREATE, INC., Defendant-Appellee.

First District (4th Division)   No. 1—87—2712

Opinion filed September 21, 1989.

JIGANTI, P.J., dissenting.

Ken Klimczak, of Michael R. Panter & Associates, of Chicago, for appellants.

Larry J. Meyer, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Nancy Gittleman and Debra Hanch, appeal from the order of the circuit court of Cook County finding that they were not entitled to the full statutory penalty of an amount equal to their security deposits, costs, and reasonable attorney fees, pursuant to section 2 of the security deposits on residential leases act (Ill. Rev. Stat. 1985, ch. 80, par. 122) (hereinafter the Act). Defendant herein is Create, Incorporated, an Illinois corporation engaged in the business of managing residential apartment buildings. The sole issue on review is whether the trial court erred in failing to impose the statutory penalty.

We reverse.

Plaintiffs were tenants of apartments leased by defendant under a

one-year written lease dated September 30, 1986. Gittleman resided at 1371 West Estes, Apartment 2F, Chicago, Illinois, and Hanch resided at 1367 West Estes, Apartment K, Chicago, Illinois. Under the terms of each lease, the security amount and the amount of rent per month would be $300.

Prior to the termination of their leases, plaintiffs made oral and written demands for the return of their security deposits. Subsequently, plaintiffs moved to new residences. An inspection checklist prepared by defendant revealed no damages to plaintiffs' apartments at the end of their tenancies.

On October 27, 1986, defendant mailed a $300 check to Hanch and to Gittleman. Both checks were sent certified mail to their respective former addresses, i.e., 1367 West Estes, Apartment K, and 1371 West Estes, Apartment 2F. Hanch's check was returned "addressee unknown" and not forwarded to any other address. Gittleman's check was returned, marked "unclaimed." On March 3, 1987, another check was mailed to Hanch, which she did receive. The check was mailed prior to defendant being served with summons in this case. A second check was mailed to Gittleman in December 1986; however, it was again returned unclaimed.

On February 17, 1987, plaintiffs filed suit against defendant and Earl Niemoth for their security deposits and interest refunds. Defendant was served on March 10, 1987. A special appearance was filed on behalf of both defendants. The trial date was set for April 2, 1987, but was continued pending a hearing on the special appearance and defendant's motion to quash service. The motion was denied on April 30, 1987. Also on that date voluntary nonsuit was taken against Niemoth, who was dismissed as a party defendant.

Plaintiffs filed their motion for summary judgment on June 10, 1987, but it was stricken due to improper notice. On June 16, 1987, defendant filed its motion for summary judgment, which was scheduled to be heard on June 29, 1987. Plaintiffs refiled their motion for summary judgment on June 18, 1987, which was scheduled to be heard on June 25, 1987, but was continued to June 29 pending the hearing on defendant's motion for summary judgment.

On July 27, 1987, arguments were heard on the cross-motions for summary judgment. The court rendered a decision in favor of plaintiffs. It ordered defendant to pay each plaintiff $15 in interest on their security deposits and to pay Gittleman $300 as her security deposit return. The court further ordered defendant to pay costs; however, the court found that plaintiffs were not entitled to an amount equal to the security deposits or attorney fees. This appeal followed.

Plaintiffs contend on appeal that the trial court erred in failing to award them the statutory penalty for refusal to pay interest on their security deposits, pursuant to sections 1 and 2 of the Act. (Ill. Rev. Stat. 1985, ch. 80, pars. 121, 122.) Defendant argues that the leases expressly provided for the disposition of interest on the deposit. A provision stamped onto the lease provided in relevant part: "It is understood that the security deposit is net of security deposit interest, if any." Defendant claims that the interest on the $300 security deposit is $15 per year, or $1.25 per month, which is deducted from the rent. Thus, defendant asserts that the gross rent is 301.25; net rent of $300, and $1.25 credited monthly as interest on the security deposit.

Defendant further argues that its refusal to pay the interest was not willful. It claims that in order to impose the statutory penalty the court must find its failure to pay the interest was willful. Defendant primarily relies on *Mallah v. Barkauskas* (1985), 130 Ill. App. 3d 815, to support this argument.

*Mallah* involved the refusal of a lessor to return a security deposit. The court ordered the lessor to return the security deposit, but did not impose the statutory penalty pursuant to section 1 of the security deposits for rent or compensation for damages act (Ill. Rev. Stat. 1983, ch. 80, par. 101), since it found that the lessor did not act in bad faith.

*Mallah* is not dispositive of the present issue. *Mallah* involves a different issue governed by a different provision. Under the provision relied on in *Mallah*, in order to impose the statutory penalty one must prove that the lessor acted in bad faith. However, under section 2 of the Act, which is applicable in the present case, the statutory penalty will be imposed if it is determined that the lessor's conduct is willful. Hence, *Mallah* is inapplicable to the case at bar.

██ The law is well settled that when construing statutes this court must give effect to the legislative intent. (*Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 5.) "In ascertaining legislative intent, the entire statute must be considered [citation] as well as giving effect to 'the evil to be remedied and the object to be attained' [citation]." (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 511.) In those instances where the legislative intent is clear from the plain and ordinary language of the statute, we are without authority to construe it otherwise. *Weisberg v. Byrne* (1981), 92 Ill. App. 3d 780, 784.

Section 1 of the Act provides:

> "A lessor of residential real property, containing 25 or more units, who receives a security deposit from a lessee to secure the payment of rent or compensation for damage to property

shall pay interest to the lessee computed from the date of the deposit at a rate of 5% per year on any such deposit held by the lessor for more than 6 months." (Ill. Rev. Stat. 1985, ch. 80, par. 121.)

Section 2 of the Act provides:

"The lessor shall, within 30 days after the end of each 12 month rental period, pay to the lessee any interest, by cash or credit to be applied to rent due, except when the lessee is in default under the terms of the lease.

A lessor who willfully fails or refuses to pay the interest required by this Act shall, upon a finding by a circuit court that he has willfully failed or refused to pay, be liable for an amount equal to the amount of the security deposit, together with court costs and reasonable attorney's fees." Ill. Rev. Stat. 1985, ch. 80, par. 122.

The words of the above two provisions are clear. We find no ambiguities in their meaning. A lessor who receives a security deposit which is held over six months must pay 5% interest per year on that deposit. Within 30 days from the end of a 12-month period the lessor must pay the lessee the interest. If the lessor willfully fails or refuses to pay the interest, he is liable for costs, reasonable attorney fees, and an amount equal to the amount of the security deposit.

As mentioned earlier, plaintiffs' leases had a stamped provision referring to the interest. During the summary judgment hearing defendant claimed that the provision meant that the gross rent was $301.25; the net rent was $300, and $1.25 was credited monthly as interest on the security deposit.

We cannot find, neither do the leases reflect, the above calculation or explanation, and a contractual acceptance of such explanation is questionable. Accordingly, the trial court ordered defendant to pay the interest due on the security deposits and impliedly found the stamped provision invalid. Nevertheless, the court only ordered defendant to pay costs.

We are of the opinion that defendant willfully refused to pay plaintiffs the interest on their security deposits. Defendant's proffered explanation of the stamped provision appears to be a means of circumventing the mandate of section 1 of the Act. The legislative history clearly states that the purpose of section 2 was to set forth a penalty for lessors who ignored the mandate of section 1 of the Act. While debating the severity of the penalty to be imposed for violation of section 1, one of the legislators stated:

"[I]t was pointed out to me that the average rent is three hun-

dred, so it would mean that the landlord would be liable or the management firm would be liable for fifteen dollars[.] [Y]ou and I know that this is not a realistic figure that he's not going to abide by the law for fifteen dollars knowing full well that the tenants would not engage a lawyer, would not take the day off *** to appear in court and as a result we had to bring it to a realistic position so that, the owners of these buildings would comply and this is the reason for it." 79th Ill. Gen. Assem., House Proceedings, August 20, 1976, at 13-14 (statements of Representative Merlo).

Another legislator noted that from his experience in his district lessors were not abiding by their legal obligation under section 1 of the Act to pay interest on security deposits. (79th Ill. Gen. Assem., House Proceedings, August 26, 1976, at 11 (statements of Representative Lundy).) In essence, the legislative purpose was to impose a statutory penalty at a severity level that would secure statutory compliance by lessors.

It is evident from plaintiffs' leases that defendant was fully aware of its legal obligation to pay interest on security deposits. As mentioned above, the lease unambiguously stated that the rent amount per month and the security deposit would be $300. Clearly, the stamped provision and defendant's explanation of its meaning are an attempt to avoid paying the interest. We conclude that, to the extent that defendant tried to circumvent the mandates of the statute, it willfully refused to pay the required interest. Therefore, plaintiffs are entitled to the full statutory penalty of costs, which the trial court awarded, attorney fees and an amount equal to the amount of the security deposit.

Accordingly, the order of the circuit court of Cook County is reversed.


Reversed.


McMORROW, J., concurs.


PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent. By statute, the defendant-landlord was required to pay interest on the security deposit it held. (Ill. Rev. Stat. 1985, ch. 80, par. 121.) Also by statute a landlord "who willfully fails or refuses to pay the interest" shall be liable for an amount equal to the security deposit together with costs and reasonable attorney fees.

(Ill. Rev. Stat. 1985, ch. 80, par. 122.) After cross-motions for summary judgment, the trial court entered judgment against the landlord in the amount of the interest of $15. The court, however, did not enter judgment for an amount equal to the security deposit nor did it award reasonable attorney fees. The plaintiffs appeal, contending that they are entitled to those items. The question presented is whether, under the statute, the landlord's conduct was a willful failure or refusal to pay interest. The parties treat the hearing on the motion for a summary judgment as a trial and I will also.

When the suit was filed, there were other matters at issue but only the nonpayment of interest and failure to award attorney fees are here on appeal. The plaintiffs alleged that they repeatedly requested the interest and that the landlord willfully failed or refused to pay. The defendant-landlord did not answer the complaint but filed a motion for summary judgment. The essence of that motion is that there was no interest due. In the motion for summary judgment the defendant noted that the lease contained a provision which stated, "It is understood that the security deposit is net of security deposit interest, if any." On the hearing on the cross-motions for summary judgment, the attorney for the landlord stated that the provision means that the yearly interest on the $300 at 5% is $15 per year or $1.25 per month. In fact, therefore, the rent is $300 plus $1.25 per month so that the rent actually paid by each plaintiff, $300 per month, was the net figure after the deduction for interest. During the course of the hearing the attorney for the plaintiff said that he thought the clause in the lease was against public policy; however, the plaintiff did not file a response to the defendant's motion for summary judgment nor make any other challenge to the defendant's interpretation of the clause.

The trial court ordered the payment of the interest but refused to order payment of penalties. The court did not make a specific finding concerning the issue of willful failure but did comment that the landlord had attempted to return the security deposit. The court's order and comments imply a finding that the defendant did not willfully fail or refuse to pay.

While the trial court did not find that the conduct of the landlord was willful, the majority of this court did. Black's Law Dictionary defines "willful" as voluntary or intending the result which actually comes to pass. As a further definition it states that willful is voluntary and intentional with the specific intent "to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or

to disregard the law." (Black's Law Dictionary 1434 (5th ed. 1979).) The author of an article in the University of Illinois Law Forum discusses the term "willful" in the context of security deposits. (Kalish, *Residential Tenant Security Deposits: A Legislative Proposal*, 1974 U. Ill. L.F. 569.) The author states that "wrongful" connotes that the deposit was retained when there is no right but that "willful" has the connotation that there is an intention to retain wrongfully. (1974 U. Ill. L.F. at 606 n.117.) Further, the author states that where the landlord makes an innocent mistake, the remedy is to allow the tenant to recover the deposit. Only if the landlord acts willfully should he be subjected to severe penalties. 1974 U. Ill. L.F. at 607.

The trial court, in refusing to impose the statutory penalty of an amount equal to the security deposit along with attorney fees, impliedly found that the landlord was not motivated by bad purpose or an intent to retain wrongfully. A finding that the landlord's conduct was not willful is amply supported by the evidence. The landlord attempted to return the security deposit. Further, the plaintiff did not challenge the landlord's contention that the $300 rent that was collected was net rent after deducting the security deposit interest of $1.25. There is no suggestion as to what else this provision in the lease might mean.

I believe it was the intent of the legislature that the meaning of the phrase "willfully fails or refuses to pay" is that in order to penalize the landlord there must be an intention to retain wrongfully. The trial court found none and I would defer to the judgment of the trial court.